528 A.2d 1087

Borough of Canonsburg *v.* Dorothy Nichols, et al. Canon-McMillan School District, Appellant.

Borough of Canonsburg, Appellant *v.* Dorothy Nichols, et al., Appellees.

Argued May 19, 1987, before Judges MACPHAIL and DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Templeton Smith, Jr.,* with him, *Richard DiSalle, Rose, Schmidt, Chapman, Duff* & *Hasley,* for appellant, Canon-McMillan School District.

*Melvin B. Bassi,* for appellee, Washington County.

*Frank C. Roney, Jr.,* with him, *Frank C. Roney, Roney* & *Roney,* for appellant, Borough of Canonsburg.

*Stephen S. Russell,* Chief Staff Counsel, Amicus Curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE MACPHAIL, July 30, 1987:

Canon-McMillan School District and the Borough of Canonsburg (Appellants) have filed appeals, which have been consolidated for our consideration, from a decision of the Court of Common Pleas of Washington County which ordered that the costs of abating a nuisance on property purchased by Washington County (County) at judicial tax sale, be shared by Appellants and the County in proportion to the taxes due them on the property.[1]

---

[1] Under this formulation the County would owe 12.6% of the demolition costs, the Borough would owe 22.4% and the School

The issue presented by the instant case is purely one of law and, as noted by the common pleas court, one of first impression. At issue are the respective duties of taxing districts to which the Real Estate Tax Sale Law (Law)[2] is applicable in bearing the costs of demolishing a structure, located on County-owned tax delinquent property, which all parties agree constitutes a public and attractive nuisance. Appellants argue that the County bears initial responsibility for paying the costs of demolition. Appellants contend that those costs may later be recovered by the County from the proceeds of any resale of the property.

The property which is the subject of the instant matter contained a dwelling which was damaged by fire. Shortly thereafter, the owners became delinquent in paying local property taxes during 1981 and 1982. Attempts by the Washington County Tax Claim Bureau (Bureau) to sell the property at or above the upset price of $3,998.60 were unsuccessful. The County subsequently purchased the property, on March 14, 1985, at public judicial sale as it is authorized to do by Section 612.1 of the Law, 72 P.S. §5860.612-1.

On September 14, 1983, the Borough filed an action in equity seeking to have the dwelling declared a nuisance and ordered demolished. The common pleas court, noting the dilapidated state of the structure, found that the existence of a public nuisance was undisputed, with the only remaining issue being which taxing district should bear responsibility for demolition

---

District would owe the remaining 65%. It was represented at oral argument that the Borough has, in fact, paid the cost of demolition. Since this allegation is not of record, we render no opinion as to the effect that any payments by the Borough would have on its rights in the instant matter.

[2] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§5860.101—5860.803.

costs. The court concluded that the costs should be shared by the three taxing districts involved.

The basis for the court's ruling was its conclusion that, despite the County's fee simple ownership of the property, it actually held the property as trustee for the benefit of all taxing districts with an interest therein. The court, therefore, concluded that the three taxing districts involved should bear collective responsibility for the costs of abating the subject nuisance.

Our analysis of the issue presented begins with Section 612.1 of the Law which provides pertinently as follows:

> Whenever any property shall be put up for public sale upon order of court . . . the county commissioners are hereby authorized to bid up to and including one dollar over and above all costs, as prescribed in section 612, for said property at such sale and if the property is sold to them for the county, the county shall take and have an absolute title, free and clear of all tax and municipal claims, mortgages, liens and charges and estates of whatsoever kind, except ground rents, separately taxed in the same manner and to the same extent as a private purchaser would have taken. In such cases, the proportionate share of said costs shall be paid to the county by the respective taxing districts in proportion to the taxes due them on such property. An amount equal to such costs due the county from any taxing district may be deducted from any tax moneys thereafter payable to such district under the provisions of this act. Upon the sale thereafter of such property by the county, the proceeds from the sale shall be distributed to the taxing authorities in proportion to the taxes due them on such property at the time of the last tax sale.

This provision reveals that where, as here, the county acquires a property at judicial sale, it obtains absolute title to the property with the taxing districts paying a proportionate share of the costs of sale.[3] Upon any later resale of the property, the proceeds are to be distributed to the taxing districts "in proportion to the taxes due them" at the time of the last tax sale.

No mention is made in Section 612.1, however, regarding responsibility for expenses incurred in maintaining, or, as here, abating a nuisance on, property purchased by the county at judicial sale. Section 206 of the Law, however, provides that:

> The county shall be liable, or initially liable for all costs, fees and expenses which shall be required to be paid to administer the affairs of the bureau and of this act, including but not limited to . . . the costs of repairs and alteration to, and insurance on property in sequestration or management. . . .
>
> All such costs, fees and expenses shall be paid as other expenses of the county are paid from appropriations made by the county, and not otherwise, and when any of such costs, fees and expenses are recovered they shall be deposited in the treasury of the county for the use of the county.

72 P.S. §5860.206. Thus, as a general rule, the county is at least initially liable for maintenance costs with respect to property it is managing under the Law. *See Mid-Valley School District Appeal,* 40 Pa. Commonwealth Ct. 110, 396 A.2d 894 (1979). We believe that this liability includes properties purchased by a county

---

[3] The relevant costs include those incurred at the upset sale, *see* Section 605 of the Law, 72 P.S. §5860.605, as well as additional costs incurred at the judicial sale, including the fee for title search. Section 612 of the Law, 72 P.S. §5860.612.

under Section 612.1 and also extends to demolition costs such as those involved in the matter *sub judice*.

This interpretation is borne out by reference to other statutory provisions in the Law and in similar enactments. For example, Section 701 of the Law, 72 P.S. §5860.701 deals with properties purchased by taxing districts prior to the 1947 enactment of the Law and requires that such properties be turned over to the county tax claim bureau for management, with title to such properties vesting in the county as trustee. Section 702 of the Law, 72 P.S. §5860.702, provides that the tax claim bureau's management powers regarding such properties include the power "to make such repairs to the property as may be reasonably necessary to restore and maintain it in a tenantable condition" and *"to recover the cost of . . . repairs, alterations or demolition of buildings . . . from the rental or sale of the property."* (Emphasis added.) Such language clearly indicates that it is *the county's* responsibility to initially pay the costs for necessary maintenance procedures.

Likewise, Section 4 of the Act of May 21, 1937, P.L. 787, *as amended,* 72 P.S. §5878d, which provides for court approval of certain sales of real estate for nonpayment of taxes, requires that the proceeds from such sales be distributed "first to the costs of sale whereat the property was acquired, second all moneys *expended by the county* in the demolition, removal or repair of any building or structure on such property after the same had been condemned as unsafe by the political subdivision in which the same is located. . . ." (Emphasis added.)

A comparison of these and other similar provisions[4] reveals the legislature's consistent intent that the costs of

---

[4] *See e.g.,* Section 3 of the Act of May 25, 1933, P.L. 1019, *as amended,* 72 P.S. §5970c; Section 16 of the Act of May 29, 1931,

repairing or demolishing structures on tax delinquent properties which are owned by the county are to be paid by the county subject to later recovery from the proceeds of the sale or rental of such properties. Our research has revealed no precedent for requiring other taxing districts to advance a proportionate share of such expenses. The fact that the County may hold such properties as a trustee for interested taxing districts is not, in our view, dispositive and does not necessarily support the common pleas court's conclusion that all interested taxing districts must share in the costs of demolition. Regardless of any existing trust relationship, we conclude that Section 206 of the Law itself is controlling regarding the County's responsibility for paying the demolition costs here involved.[5]

We, accordingly, will reverse the order of the common pleas court.

ORDER

The order of the Court of Common Pleas of Washington County in the above-captioned matters is hereby reversed.

---

P.L. 280, *as amended*, 72 P.S. §5971p, repealed in part by Section 801 of the Law, 72 P.S. §5860.801.

[5] Since we conclude that Section 206 of the Law requires that the County bear initial responsibility for paying the costs necessary to abate the subject nuisance, we need not address the School District's additional argument that it has no statutory authority to expend funds for the demolition of a structure on property which it does not own.